# Snodgrass *v.* Snodgrass.

## *Bill for an Accounting.*

(Decided February 12, 1914.   64 South. 594.)

1. *Limitation of Action; Accrual of Cause of Action; Accounting.*—
The facts considered and held to create a relation of a trust nature
and that the inception of a period which would bar the right to an
accounting could not antedate the last act done under or in recogni-
tion of the existence of the trust.

2. *Same.*—Where the trust relation continued up to the date of the
death of the beneficiary, the right to an accounting was not barred
by prescription where the bill was filed for an accounting within
seven years after the date of the death of the beneficiary; prescrip-
tion being twenty years in this state.

3. *Trusts; Termination; Death of Beneficiary.*—Where a brother
managed and controlled all of the property of his sister who was of
unsound mind, the trust relation terminated at her death, and as
she was the beneficiary of the relation, and her demise left the trust
without a beneficiary, the trust was thereby determined.

4. *Same; Laches; Accounting.*—Where the trust relation between
a brother and a sister of unsound mind continued for over eighteen
years, and those to whose pecuniary interest it was to have an ac-
counting remained wholly inactive for over six years after the termi-
nation of the trust relation caused by the death of the sister of
unsound mind, and took no steps to compel an accounting until after
the death of the brother who bore such trust relation to his sister,
the courts will deny the accounting on account of laches, and the
facts shown will not excuse the delay.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill for an accounting by John H. Snodgrass as ad-
ministrator, against Eliza A. Snodgrass, as adminis-
tratrix. From a decree overruling demurrers to the
bill, respondent administratrix appeals. Reversed and
remanded.

VIRGIL BOULDIN, and JOHN B. TALLEY, for appellant.
The demand was stale and barred by laches, and these
matters appearing from the face of the bill, the court
was in error in overruling respondent's demurrers

pointing out these defects.—*Greenleas v. Greenleas,* 62 Ala. 330; *Nettles v. Nettles,* 67 Ala. 599; *Harrison v. Heflin,* 54 Ala. 552; 4 W. & S. 569; *Garrett v. Garrett,* 69 Ala. 429; *Sample v. Glenn,* 91 Ala. 245; *Roach v. Cox,* 160 Ala. 425; *Salmon v. Wynne,* 153 Ala. 538; *Street v. Henry,* 124 Ala. 153; *Fowler v. Ala. I. & S. Co.,* 164 Ala. 414.

W. H. NORWOOD, and MILO MOODY, for appellee. The bill as amended falls within the ruling of this court in the following cases.—*Whetstone v. Whetstone,* 75 Ala. 495; *Moody v. Bibb,* 50 Ala. 245; *Corbett v. Carroll,* 50 Ala. 315. The trust having been admitted, neither laches nor limitations will apply.—*Ala. C. & C. Co. v. Gulf C. & C. Co.,* 171 Ala. 544.

MCCLELLAN, J.—This is the second appeal in this cause.—*Snodgrass v. Snodgrass,* 176 Ala. 276, 58 South. 201. A somewhat similar cause, of like title, was considered in 176 Ala. 282, 58 South. 199. Different conclusions prevailed in the two appeals. Both bills sought an accounting of one who had served as trustee of estates for a long term of years. The ruling on the last-mentioned appeal was predicated upon the doctrine of *Whetstone v. Whetstone,* 75 Ala. 495. The opinion in the former appeal of this cause recognized *Whetstone v. Whetstone* as authoritative, but distinguished that authority, and *Snodgrass v. Snodgrass* following it, by reference to the facts averred in the original bill in this cause. Upon the remandment of this cause, the bill was amended. It is to be inferred that the object of the amendment was to state a cause within the doctrine of *Whetstone v. Whetstone* and of *Snodgrass v. Snodgrass,* 176 Ala. 281, 58 South. 199. It is insisted for appellant that the principles announced

and applied on former appeal in this cause require the reversal of the decree overruling the grounds of demurrer to be indicated, notwithstanding the amendment effected.     This contention renders it necessary, if not otherwise essential, that the pronouncement of applied principle in the opinion on former appeal should be, to a degree at least, re-examined.     The conclusion was that the grounds of demurrer numbered 1, 2, 3, and 10 were erroneously overruled by the chancellor.     These grounds, in the order of their number, were: That the demands set up were stale; that they were barred by laches; that they were barred by prescription; and that "the matters complained of in the bill have been continuing for a period of 25 years; that no settlement or accounting has ever been had; that Ann C. Snodgrass is dead and had been dead for six years before the bill was filed; that N. H. Snodgrass is dead; that no bill was filed during his life for more than five years after the death of Ann C. Snodgrass, and the matters and things set up are of such nature that, by death of parties, want and loss of evidence, it is impossible to do justice between the parties on an accounting, and said demands and each of them severally are barred by laches."     It is seen that the tenth ground of demurrer is but an amplification, by recitals of facts of grounds 1 and 2, ante.

The original bill was filed July 22, 1911.     Ann C. Snodgrass died July 25, 1904.     Nathaniel H. Snodgrass was a brother of Ann C. Snodgrass.     They were children of John Snodgrass, who died in 1880, from whom Ann C. inherited, in her proportion, an estate of both personal and real property.     Another brother of Ann C., viz., William E., exercised, by general consent in the family, the trusteeship of the estate of Ann C., as well as that of another brother, John T., until December 15,

1886; at which time the care, management, and control of said estates of the adults, Ann C. and John T., was committed, with like consent, to Nathaniel E. Snodgrass, defendant's intestate. Ann C., John T., and Nathaniel E. occupied as tenants in common and lived together upon lands so descending until the death of Ann C. in July, 1904. It is averred in the original bill that upon the acceptance, in 1886, of the trusts by Nathaniel H., the entire trust estates were turned over to him. It is then averred "that, from and after the time Nathaniel H. Snodgrass so accepted said trust, and assumed to act as general [agent] of and for the said Ann C. Snodgrass in receiving, managing, and controlling her entire estate and business affairs, he continued to act as such agent and trustee until the death of the said Ann C., which occurred July 25, 1904; that during the entire period of said agency he, the said Nathaniel H. Snodgrass, was exclusively engaged in the occupation of farming, and he in each and every year during the continuancy of his said agency, that is to say, from and including 1887 to and including the year 1904, when said Ann C. died, caused to be cultivated on his individual account a large portion" of the tillable lands in which Ann C. had a one-fifth undivided interest and annually rented or leased the remainder of the land in which she had that interest; and that he *"received and collected the entire rents and profits of said lands in each of said years from 1887 to 1914, both inclusive."* (Italics supplied.)

It is clear from the averments of the original bill that the relation, to the estate of Ann C., assumed and acted upon by Nathaniel Snodgrass, was one of a trust nature; and that the inception of a period wherefrom, if sufficiently long maintained, the right or the remedy to exact an accounting by the trustee would become bar-

red, could not and did not antedate the last act done under or in recognition of the existence of the trust.— *Whetstone v. Whetstone*, 75 Ala. 495, 502; *Snodgrass v. Snodgrass*, 176 Ala. 282, 58 South. 199. Since the period of prescription in this state is 20 years, it is manifest that the time elapsing between July 25, 1904— when Ann C. died—and the filing of the original bill, was entirely insufficient, being approximately 7 years, to raise in behalf of the trustee or of his personal representative any right of defense based upon prescription. So, the former opinion in this cause was and is unsound in its pronouncement of error in the chancellor's decree in overruling the ground of demurrers asserting the bar of the complainant's right or remedy by reason of prescription. To that extent the former opinion, in this cause, is overruled.

Pretermitting the recital of any more of the facts averred in the amendment than are at this time essential, the pith of the presently important averments therein are these: "Ann C. Snodgrass was always, after she reached and passed the age of twelve years down to her death, which occurred on July 25, 1904, of unsound mind and subject to fainting fits, with which she was often and repeatedly visited during her life, and she died * * * while a fit or convulsion was upon her. The unsoundness of her mind was in a degree such as to render her wholly incapable of understanding business affairs, or transacting her business affairs with judgment and intelligence." That "it was ascertained by her teachers and by her parents that her mind was incapable of receiving and retaining more than the rudiments of a literary education." That her mental incapacity was well known to her parents and to her brothers, one of whom Nathaniel was. That the father, shortly before his death, verbally requested his

sons, among them Nathaniel, to watch and care for their unfortunate brother (John T.) and sister (Ann C.). That, in 1883, for a consideration of $6,000, James D. Snodgrass conveyed his entire interest in the father's estate to his brothers and sister, viz., Wm. E., John T., Nathaniel, and Ann C., thereby enhancing their interests in the real estate from one-fifth to one-fourth. It is then averred that, "after the death of said Ann C. Snodgrass, which occurred on July 25, 1904, the said N. H. Snodgrass recognized and admitted his continuing agency and trusteeship of and for the said Ann C. Snodgrass in receiving, managing, and controlling her entire estate during the entire period of time from December 15, 1886, to the time of her death, on July 25, 1904, by voluntarily accounting with and paying over to her brother, said James D. Snodgrass, who was one of her heirs, the full amount of his entire interest in her estate owned by her at the time of her death, which said accounting and settlement of said trusteeship on the part of the said N. H. Snodgrass embraced and included all sums of moneys received by him for and on account of said Ann C. Snodgrass during the period of his trusteeship, namely, from December 15, 1886, to the time of her death on July 25, 1904. The several money items which entered into said accounting each specifically and separately set out in the original bill filed in this cause, to which original bill reference is here now made, that is to say: In said settlement so made between said N. H. Snodgrass and James D. Snodgrass, the said N. H. Snodgrass accounted for the one-fifth interest of said James D. Snodgrass as one of the heirs of the said Ann C. Snodgrass, deceased, and said accounting and settlement by and between said N. H. Snodgrass as such trustee, and the said James D. Snodgrass, was had and concluded on or about April 19, 1906, at which time he,

said James D. Snodgrass, sold and conveyed by deed to said N. H. Snodgrass his entire interest in the estate of the said Ann C. Snodgrass owned by her, or to which she was entitled at the time of her death. The expressed consideration named in said deed is $2,000."

It is further averred that Nathaniel never denied or repudiated the trust or his obligation to account for and settle the same; "but, on the contrary, he at all times and continuously, by his acts and declarations both before and after the death of said Ann C., held himself out to the world as her agent and trustee, and recognized and admitted the existence of such continuing trust on his part, and his duty and obligations to account for and settle said trust." It is further averred: "That about three months before the death of said N. H. Snodgrass, he, in conversation about his business affairs, which conversation was with divers of his acquaintance and friends, several of whom are living and reside in Jackson county, Ala., and who have no interest in the result of this suit, stated in said conversations that he had been continuously for many years receiving, managing, and controlling the moneys and all other properties belonging to said Ann C. Snodgrass, as her agent and trustee for many years next before her death, and that he had not, but that he desired to have an accounting and settlement of his trust with his brother Wm. E. Snodgrass. That his said brother desired such settlement, and that his said brother objected to his cutting and selling timber trees grown on lands owned in common by said N. H. Snodgrass, Wm. E., and John T. Snodgrass. That he did not think his brother, Wm. E. Snodgrass, should have objected to his having cut and sold timber trees from said lands and for the reason that the branches and tops of said trees were, or some of them were, dead and others were

dying, and that he believed that the bodies of said trees, if not cut down and disposed of, would soon die and become valueless; and for the further reason why said Wm. E. Snodgrass ought not to have objected to his cutting and selling timbers on and from said lands that he, said N. H. Snodgrass, had managed the property and estate of their brother, John T. Snodgrass, in such a way as to double the same in value, and that the estate belonging to the said John T. Snodgrass had been so increased in value by the good management by him, said N. H. Snodgrass, as to be worth in value $30,000. Your orator further avers that, about three months before the death of said N. H. Snodgrass, he wrote and sent to his brother, Wm. E. Snodgrass, a letter in which he requested a friendly meeting between said Wm. E. and himself for the purpose of a settlement of his trusteeship for Ann C. Snodgrass and for a division of the estate owned by her at the time of her death among the parties entitled to the property and effects of her estate."

It is manifest that the trust relation, and the trust described in the original and amended bills, terminated upon the date of the death of Ann C. Snodgrass, July 25, 1904.—2 Beach on Trusts, § 760. She was, in the nature of things, the beneficiary of the relation of confidence, and her demise, on that date, necessarily left that formerly existing trust without a beneficiary, thereby determining the trust. It was ruled in *Whetstone v. Whetstone,* and recently reaffirmed in *Snodgrass v. Snodgrass, supra,* 58 South. 199, that lapse of time is without effect on right or remedy, in respect of an accounting or liability arising out of a trust, where there is a recognition of the existence of the trust; that each act, or other recognition of the trust, affords a new beginning for periods that may, if of sufficient duration, bar the right or the remedy.

As the result of the stated termination of the trust described in the original and amended bill, it is clear that none of the averments, describing acts of the trustee subsequent to the death of Ann C., added to the bill by the amendment, availed to do more than show that Nathaniel Snodgrass recognized that there had been a trust of which Ann C. was the beneficiary up to the date of her death July 25, 1904. So the solution of the issue, on the pleadings, raised by the objection to the amended bill that laches intervened, depends upon the facts and circumstances averred in the amended bill in connection with the period elapsing between July 25, 1904 (the date of Ann C.'s death), and July 22, 1911 (the date the original bill was filed). To justify the stated objection, appeal is made to the doctrine thus expressed in *Rives v. Morris,* 108 Ala. 527, 18 South. 743, in accord with its statement in both earlier and later cases: "Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the plaintiff will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied." The bases of the doctrine is found in the disposition of equity—independent of statutes of limitations—to quicken the diligence of those who have claims or demands to assert, by denying to the inert the aid of that agency, and to promote justice by refusing to hear and determine where changed circumstances, attendant upon the lapse of time during which no excuse for inaction is shown, render it fairly certain that a safe determination of the controversy could not be had because of the loss of satisfactory means to that end. The

application of this doctrine to the facts and circumstances averred in the amended bill affords the only debatable question as upon the objection of laches. The determination of the application of the doctrine depends upon the facts and circumstances of the individual case, and whether laches has intervened to deny the remedy "is a question to be resolved by the sound discretion of the court."—*Brown v. County of Buena Vista,* 95 U. S. 160, 24 L. Ed. 422; *Salmon v. Wynn,* 153 Ala. 538, 45 South. 133, 15 Ann. Cas. 478.

While the great duration of the trust—from 1886 to 1904—cannot, under established principles hereinbefore restated, avail to affect the right to the remedy the original and the amended bills would assert, yet in exercising the sound discretion reposed the court will consider the period the trust covered and the extent and nature of the transactions or affairs of which an accounting is sought in order to determine whether the means to the ascertainment and effectuation of justice are fairly sufficient to enable the court to safely exercise its ordinary functions in such cases.

The amended bill presents no excuse whatever for the stated postponement and delay in the assertion of the remedy sought. The averred mental incapacity of Ann C. Snodgrass, of course, presents no excuse for the delay since her death. The averred concession, by word and act, of Nathaniel Snodgrass that a trust had existed, affords no excuse. Upwards of six years intervened between the deaths of Ann C. and Nathaniel Snodgrass; the latter dying November 24, 1910. Letters of administration on the estate of Ann C. were never issued or applied for until February, 1911. The bill was filed July 22, 1911. It thus appears that the accounting sought would cover eighteen years, beginning in the year 1886; and that it, if directed, would be with the

personal representative of the deceased trustee, Nathaniel Snodgrass, on the one side, and with the personal representative of the cestui que trust, Ann C. Snodgrass, on the other. The activity, throughout eighteen years, of the trustee comprehended the care, custody, and control of the comparatively large real and personal estate of Ann C. Snodgrass, and the discharge of such of her personal expenses, and those of maintenance of her estate, as would naturally attend the management and agency committed to him. During six years of the trustee's life after her death those to whose pecuniary interest it was, we may assume, to have an accounting, remained wholly inactive, taking no steps to invite, much less to compel, an accounting by the trustee. Only after his death was any action for accounting taken. For this complete inertia, under the circumstances indicated, no excuse is offered by the amended bill. There is no suggestion that this delay was promoted, in any degree, by the trustee. To the contrary, the averments with respect to the trustee's expressions and acts subsequent to Ann C. Snodgrass' death tend strongly to show that he was not averse to an accounting and to a settlement.

From a careful consideration of all the facts and circumstances set forth in the amended bill, coupled with the more than six years of unexcused delay after the trust terminated and the death of the trustee, convince this court that "there can be no longer a safe determination of the controversy," that to enter upon the accounting sought would expose the estate of the trustee, and in consequence those who are entitled to his estate, to the "danger of injustice from the loss of information and evidence and means of recourse occasioned" by his death and the extended period that has elapsed since 1886.

The grounds of demurrers asserting the objection of laches should have been sustained.   The decree is therefore reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, DE GRAFFENRIED, and GARDNER, JJ., concur.