42 So.2d 9

**URQUHART et al. v. McDONALD et al.**

1 Div. 339.

Supreme Court of Alabama.

June 30, 1949.

Barnett, Bugg & Lee, of Monroeville, for appellants.

C. L. Hybart and J. M. Coxwell, of Monroeville, for appellees.

## PER CURIAM.

This is an appeal from a decree overruling a demurrer to a bill in equity. The bill is primarily one in the nature of a bill of review to cancel a decree of the probate court of Monroe County setting aside homestead exemption to the widow because of fraud in the procurement or concoction of said decree. The bill also seeks the cancellation of certain conveyances, but the relief in this connection is dependent upon the cancellation of the decree of the probate court.

The demurrer was to the bill as a whole, but if the bill did not state a case for the cancellation of the decree as against the demurrer interposed, then the demurrer should have been sustained. The decree sought to be vacated was rendered April 25, 1930. The bill was not filed until 1947. The statute of limitations for a bill of review will, by analogy, be applied to a bill in the nature of a bill of review. It was declared in Quick v. McDonald, 214 Ala. 587, 108 So. 529, 532, that, by analogy

of the statute of limitations to bills of review, no special features appearing, the limitation is fixed at three years, subject to the statute giving one year after discovery of the fraud. See also Cassady v. Davis, 245 Ala. 93, 15 So.2d 909.

[3-5] It appearing on the face of the bill that it was filed more than three years after the date of the decree sought to be vacated, it was incumbent upon the complainant to allege facts to excuse the long delay in filing the present bill. We are of the opinion that complainant, appellee, has failed to do this in that the bill does not show how complainant obtained the information on which this suit was filed. Such a bill as this must allege with precision and accuracy not only when but how complainant came into a knowledge of the various facts alleged as constituting the right sought to be enforced. Duncan v. Williams, 89 Ala. 341, 350, 7 So. 416; Alabama Coal & Coke Co. v. Gulf Coal & Coke Co., 171 Ala. 544, 54 So. 685; Peters Mineral Land Co. v. Hooper et al., 208 Ala. 324, 94 So. 606.

Because of the failure of the bill to contain such averments, we are of the opinion that the ground of the demurrer taking the point that the bill was not filed within three years from the date of the decree sought to be cancelled should have been sustained. The decree of the trial court is reversed and one here rendered sustaining the demurrer. The complainant is given thirty days from the date on which the certificate of the clerk of this court reaches the register of the circuit court of Monroe County, in equity, to amend.

Reversed, rendered, and remanded.

FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, Justice (concurring specially).

The complainants in this case are the grandchildren of W. D. Fountain, who as the bill in its body alleges died in the year 1927, seized and possessed of the house and three lots which he occupied as his homestead, described in the bill as located in Block "F" of Monvil Park Addition to the Town of Monroeville, Ala. The proceedings in the probate court, a transcript of which is attached to the bill and made a part thereof, show that Fountain died on the 8th of November, 1926, leaving a widow and no minor children and that the said homestead was all the property he owned, that it did not exceed 160 acres in area nor more than $2,000 in value.

The decree of the probate court which the bill attacks was entered on the 25th of April, 1930, setting apart the property to the widow of decedent and vesting in her the legal title thereto. The proceedings on their face are in all things regular. The complainants Annie McDonald and Minnie Strock are the children of a daughter of said Fountain who predeceased him and George Fountain is a son of Alex Fountain, a son of said W. D. Fountain who predeceased said ancestor. The complainants so far as the allegations of the bill show were of full age at the time of the death of their grandfather. The bill was filed October 2, 1947, 20 years, 10 months and 24 days after the death of said W. D. Fountain and 17 years, 5 months and 7 days after the property was set apart by the Probate Court of Monroe County as exempt to the widow Bettie Fountain, vesting in her the absolute fee simple title, and fifteen years after the death of the widow in the year 1932. Bettie Fountain executed and delivered to her daughter Mrs. Riley a warranty deed to said property reciting a valuable consideration therefor on the date of the decree, April 25, 1930. Mrs. Riley and husband on March 8, 1933, conveyed by warranty deed to the respondents Urquhart, Snider, Barnes and McDonald for a recited consideration of $1 and other valuable considerations, reserving in Mrs. Riley a life estate. These deeds were both promptly recorded in the probate office of Monroe County, Alabama, the last mentioned on the 9th of March, 1933, the day after its execution.

The basis for the relief prayed is stated in the 5th paragraph of the bill as last amended as follows. "That your complainants and respondents are the heirs at law of W. D. Fountain, deceased, and that your complainants were never given any notice of the hearing of said petition and the appraiser's report either by citation or

otherwise, and that they never signed said alleged acceptance of service of said notice. Copies of which are hereto attached as Exhibits E-1, E-2 and E-3. That they have examined their purported signature to said acceptance of notice which is on file in the Probate Court of Monroe County, and that the purported signatures are not theirs and that they have never authorized any one to sign said acceptance of service, nor did they know of any such proceedings on the part of the widow; Bettie Fountain, in petitioning the Probate Court to set aside said lands as her homestead or any such proceedings in said court relative to the setting aside of said homestead to the widow of W. D. Fountain, deceased, and had no knowledge of anything that would lead them to know or believe or cause them to make inquiry that such a proceeding was being had in the Probate Court of Monroe County, Ala., relative to setting aside a homestead to Bettie Fountain, the widow of W. D. Fountain, deceased. That at the time of said purported proceedings in the Probate Court of Monroe County that the aforesaid property was worth Twenty-five Hundred Dollars ($2500.00) or more."

The bill seeks to cancel the proceedings in the Probate Court of Monroe County on the grounds stated in said paragraph and to cancel the deed executed by Bettie Fountain to Mrs. Riley and the deed of Riley and wife to the respondents now in possession of the property, alleging that the adverse claim did not come to their knowledge until the death of Mrs. Riley a short time before the filing of the bill. There is an absence of allegation that during the twenty years and more the persons in possession ever recognized the rights of complainants to any interest in said lands.

The demurrer challenges the bill for want of equity and on specific grounds, among others.

"5. It clearly appears from the allegations of the amended bill of complaint that complainants are guilty of laches which should be held to bar them from maintaining this suit.

"6. It affirmatively appears from the allegations of the amended bill of com-plaint that Nannie F. Riley had held adverse possession of said property sufficiently long to perfect title in her by adverse possession.

"7. It appears from the allegations of the amended bill that Nannie F. Riley was an innocent purchaser of said property with no notice of the claim of complainants and that her conveyance to Lucy Urquhart, Fannie Snider, Viola McDonald and Daisy Barnes was likewise free from any such notice.

"8. It affirmatively appears that the said Nannie F. Riley acquired title to said property as an innocent purchaser on April 25, 1930, and held the same adversely under said title continuously until her death on January 21, 1947; and that no inquiry was made by complainants as to why she was in possession and no demand was made upon her for any accounting for rents or otherwise, and that during all this time the deed to her was upon the public records of Monroe County, Alabama.

"9. Nothing in the allegations of the amended bill charge the said Nannie F. Riley, or the present owners of the lands, with being a party to the alleged fraud, nor as having any knowledge that complainants claimed fraud as alleged.

"11. This cause was barred by the Statute of Limitations of ten years prior to the filing of the suit.

"12. Under the circumstances alleged in the amended bill, the complainants were charged with knowledge of the deeds from Bettie Fountain to Nannie Fountain (named as Nannie F. Riley) and from Nannie F. Riley and husband to Lucky Urquhart, Fannie Snider, Viola McDonald and Daisy Barnes from the date they were filed for record.

"13. It clearly appears from the allegations of the bill that Nannie F. Riley, as an heir of W. D. Fountain, would have no exclusive right to the possession of this property after the death of her mother, Bettie Fountain, during the year 1932; but if she had occupied the same as an heir of the said W. D. Fountain, she would have been legally bound to account to the other joint owners for rents.

"15. That allegations of the amended bill show that the said Bettie Fountain was the widow of the said W. D. Fountain; that she proceeded in the way provided by law to have the property in question set apart to her as exempt; that it was so set apart by a court of competent jurisdiction, thereby vesting the fee simple title in her; that following this action she sold and conveyed the property to Nannie Fountain (same person as Nannie F. Riley) who occupied the same adversely until her death in 1947, being more than sixteen years; that her ownership and possession were not questioned during her lifetime, though her deed had been a matter of record for all these years.

"16. The regular decree of the Probate Court involved in this proceeding was a matter of record for about seventeen (17) years before it was attacked and no facts are shown to justify an attack at this late date.

"17. It clearly appears from the allegations of the amended bill that if complainants had exercised ordinary care in the matter of protecting their alleged property rights in this case they would have known all the facts many years ago.

"19. It does not sufficiently appear from the allegations of the amended bill that there would have been any different decree of the Probate Court in this case if complainants had been present at the hearing referred to; therefore, no loss or damage to complainants is shown.

"20. There is no allegation that the widow of W. D. Fountain, nor any of these respondents, knew of or participated in the alleged fraud."

The complainants' right to attack the proceedings of the probate court stems from their inheritance at the date of the death of their ancestor W. D. Fountain and as we have shown the bill in this case was filed more than 20 years after his death and as observed by this court, speaking through Justice Sayre in Kidd v. Borum, 181 Ala. 144, 161, 61 So. 100, 106, Ann. Cas.1915C, 1226, to paraphrase: During that time, it is to be inferred, complainants have enjoyed no benefit of their ownership and for more than 20 years they might have taken or claimed possession and upon denial of their claims might have maintained an action in their own name and behalf. "This court has repeatedly held that the lapse of 20 years, without recognition of adversary right, or admission of liability, operates an absolute rule of repose. Many of the cases are cited in Jackson v. Elliott, 100 Ala. 669, 13 So. 690, where the question of the application of the doctrine of prescription to a case between tenants in common was put aside because not raised by the record in such form as to require consideration. A reading of these cases leads us to the conclusion that, as to the estate for the life of testator's widow, defendants have been barred by a failure for more than 20 years to assert their rights. In the meantime complainant and her immediate predecessor in title have been in the uninterrupted and unquestioned possession of the land and in the like enjoyment of its undivided usufruct without the slightest recognition of the right now asserted by defendants. In such a case the court, for the repose of society, will presume any state of the title in order to maintain a status of parties and property so long allowed to remain undisturbed." Kidd v. Borum, supra; Moore et al. v. Elliott, 217 Ala. 339, 116 So. 346.

"The principle of prescription is also involved. This is a 20 year period after which the transaction is generally immune from attack made upon it, which is not affected by the circumstances of the situation as with laches, and applies without regard to the disabilities of the parties or their mental condition, but does not begin to run as long as the party opposed in interest recognizes the existence of the right. Hendley v. First Nat. Bank, 235 Ala. 664, 180 So. 667; Patterson v. Weaver, 216 Ala. 686, 114 So. 301; * * *." Wise v. Helms, ante, p. 227, 40 So.2d 700, 702.

The doctrine of prescription aside, it appears from the allegations of the bill that the proceedings instituted by the widow 3 years after the death of her husband, which resulted in setting apart the exemptions and vesting in her the legal title, a proceeding prosecuted for her benefit on the face thereof, the complainants signed an acceptance of service upon

which the court acted in setting apart the exemptions and vesting said title in the widow. The widow died in 1932,—17 years, 5 months and 7 days elapsing since the decree was rendered without any attack on the part of the complainants to claim any interest in the property and more than 15 years have elapsed since the death of the widow and complainants delayed to institute this suit until the death of Mrs. Riley to whom the widow conveyed the property by warranty deed. These facts appear on the face of the bill and under the settled law, the complainants are guilty of laches in seeking to vacate said decree of the probate court. Johnson v. Delony et. al., 241 Ala. 16, 1 So.2d 11; Meeks v. Miller, 214 Ala. 684, 108 So. 864; Ammons v. Ammons, Ala.Sup., 42 So.2d 776.

Construing the averments most strongly against the pleader, the complainants designedly delayed to make any claim until the death of the widow and her grantee, who probably could and would have testified that complainants did sign said acceptance of service at their request and in their presence.

"Another rule in equity which finds frequent application is, that 'equity aids the vigilant, and not those who slumber on their rights.' or as the maxim is variously expressed in the Latin, 'vigilantibus non dormientibus factae sunt.' In equity a party is not permitted to sleep over his rights, to the prejudice of the party on whom he makes a claim, and who by the delay may be deprived of the evidence and means of effectually defending himself. Therefore, a demand must be made within a reasonable time; otherwise the claim is considered stale, and a court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept on his rights and acquiesced for a great length of time. Nothing can call forth into activity a court of equity but conscience, good faith, and reasonable diligence. When these are wanting, the court is passive, and does nothing. This maxim not only covers generally the subject of laches, which is treated in detail elsewhere, but it has also been employed very broadly to deny relief generally to those who neglect to take care of themselves and who thereby suffer losses which ordinary care would have prevented. * * *." 10 R.C.L. § 138, p. 388. This text is founded on the decision of this court in Wright v. Paine, 62 Ala. 340, 34 Am.Rep. 24, and other cases. See also 10 R.C.L., Equity, §§ 142–157.

In Ammons v. Ammons, supra, it was held that § 42, Title 7, Code of 1940, which gives a party one year after the discovery of fraud to proceed, "does not require actual notice, since a fraud is discovered within the contemplation of law when it is readily discoverable or when a party is put on notice thereof. Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606."

I am of opinion that the decree of the circuit court overruling the demurrer to the bill should not only be reversed but that a decree should be here entered sustaining the demurrer and dismissing the bill.

LIVINGSTON, Justice (dissenting).

Complainants are the grandchildren of W. D. and Bettie Fountain, deceased, and respondents are the children and grandchildren of the said W. D. and Bettie Fountain.

As I view it, the bill here under review is primarily a bill in the nature of a bill of review to set aside and hold for naught the order or decree of the Probate Court of Monroe County setting apart certain described property to Bettie Fountain as a homestead because of fraud in the procurement or concoction of said decree. In addition the bill seeks to have cancelled and held for naught the deeds conveying said property from Bettie Fountain to Nannie Fountain Riley, and from Nannie Fountain Riley and husband to Lucy Urquhart, Fannie Snider, Daisy Barnes and Viola McDonald, and also a sale of the property and a division of the proceeds.

In substance the bill alleges that W. D. Fountain departed this life intestate in Monroe County, Alabama, in the year 1927, and left surviving his widow, Bettie Fountain, and several children, none of whom were minors, and several grandchildren; that there has been no administration on his estate; that on April 25, 1930, the prop-

erty involved in this cause was set apart to Bettie Fountain, the widow, as a homestead by order or decree of the Probate Court of Monroe County, vesting the fee simple title thereto in the widow. On the same day, April 25, 1930, Bettie Fountain, the widow, conveyed the property to one of her daughters, Nannie Fountain. Bettie Fountain died in 1932. On March 8, 1933, Nannie Fountain, who in the meantime had married L. R. Riley and joined her husband, conveyed the property to four of her sisters, viz., Lucy Urquhart, Fannie Snider, Daisy Barnes and Viola McDonald, reserving a life estate in Nannie Fountain Riley who died January 21, 1947.

In essence the fraud charged is, that although the proceeding to set apart the homestead to the widow, Bettie Fountain, and the decree setting it apart, were in all respects regular and valid on their face, complainants had no notice or knowledge thereof; that upon petition of the widow to set apart the homestead, the probate court on to wit, January 23, 1929, appointed appraisers or commissioners to appraise the property sought to be set apart as a homestead and to report their findings as required by law; that the appraisers or commissioners reported on January 24, 1929, that the property involved was less than one hundred and sixty acres in area, and less than $2,000 in value; that on April 27, 1929, the probate court entered an order or decree fixing May 15, 1929, as the day for hearing the petition of the widow and the report of the commissioners, and further ordered that all of the heirs at law of the said W. D. Fountain, deceased, be given notice of the petition and of the report of the appraisers and of the day set for hearing the same by personal service of at least ten days before said date, unless said heirs at law should file in court their written acceptance of service, and a waiver of all other or different service therein; that a written acceptance of service and waiver of further or different service, purportedly signed by complainants, was filed in said cause; that complainants did not sign the acceptance and waiver of service, nor did they authorize any one else to sign the same for them; that they had no knowledge of the proceedings to set apart a homestead to the widow, Bettie Fountain, and never heard of it until after the death of Nannie Fountain Riley in 1947. That complainants had no knowledge whatever of the deed conveying the homestead property from Bettie Fountain to Nannie Fountain (later Mrs. Riley), nor of the deed conveying said property from Nannie Fountain Riley to her four sisters until after the death of Mrs. Riley in 1947; that Bettie Fountain, the widow of W. D. Fountain, deceased, continued to live on and occupy the property with Nannie Fountain living with her until the death of Bettie Fountain in 1932; that after the death of Bettie Fountain, Nannie Fountain Riley continued to occupy the property until her death in 1947. That at the time the property was set apart to the widow as a homestead it was of the value of $2500 or more; that after the death of W. D. Fountain the only persons in the visible possession of the homestead property was his widow, Bettie Fountain, up to the time of her death, and his daughter Nannie Fountain Riley up to the time of her death. That the mother of complainants, Annie McDonald and Minnie Strock was a daughter of W. D. and Bettie Fountain and predeceased W. D. Fountain; that complainant George Fountain is the son of Alex Fountain who was the son of W. D. Fountain, and that the said Alex Fountain predeceased his father, W. D. Fountain. Complainants further allege that they instituted this suit within thirty days after learning of the proceedings to set apart the homestead and of the two deeds above described.

From the decree overruling demurrers to the bill, respondents appeal.

Prior to the Code of 1923, no notice to the heirs was required where exemptions of real or personal property had been reported by appraisers or commissioners to the widow and minor child or children, or either. As said in Lester v. Stroud, 212 Ala. 635, 638, 103 So. 692, 694, "the burden was thus placed on the heirs to keep a lookout for proceedings in the probate court which might be instituted and completed within 30 days. McDonald v. McAlily, 206 Ala. 105, 89 So. 198. * * * This system naturally lent itself to abuses,

and is now remedied by section 7934, Code of 1923."

Section 7934, supra, appears in the Code of 1940 as section 677, Title 7, and reads: "In all cases where exemptions of real or personal property have been reported by appraisers or commissioners to the widow and minor child or children, or either, it shall be the duty of the probate judge, immediately upon the filing of the report of such appraisers or commissioners, to give ten days' notice thereof, and of ·the day set for the hearing of said report to the next of kin of decedent, which date of hearing shall not be less than thirty days from the filing of said report. If any of said next of kin are nonresidents of the state, said notice shall be given by publication once a week for three successive weeks in some newspaper published in the county, or, if none is published in the county, by posting such notice of said length of time at the courthouse door and three other public places in the county."

Appellants insists that the instant bill is .a collateral attack upon the proceedings and decree setting apart the homestead to the widow, Bettie Fountain, citing Williams v. Overcast, 229 Ala. 119, 155 So. 543; Albright v. Creel, 236 Ala. 286, 182 So. 10; Venable v. Turner, 236 Ala. 483, 183 So. 644; Faulk & Co. v. Boutwell, 242 Ala. 526, 7 So.2d 490.

In Venable v. Turner, supra, no decision was made as to whether the attack on the homestead proceedings was direct or collateral, the same being unnecessary. The three other cases cited were suits for division or sale for division of property claimed to be owned jointly, the claim of joint ownership being predicated upon the invalidity of a decree of the probate court setting apart the lands involved as a homestead.

In the instant case the attack on the decree setting the homestead apart to the widow is direct for the lack of notice to those entitled under the statute to receive it. See, Wright v. Fannin, 229 Ala. 278, 156 So. 849. Equity having assumed jurisdiction for that purpose may also on proper showing set aside the deeds of the widow to Nannie Fountain Riley, and from Nannie Fountain Riley to her four sisters, and sell the lands for division of the proceeds if they cannot be equitably divided in kind.

The most serious question presented is the effect of the non-compliance with section 677, Title 7, Code, and laches.

Section 677, supra, first appeared in the Code of 1923 as section 7934. Prior to that time notice to the heirs at law of a proceeding to set apart the homestead of a deceased husband was not required. This, as said in Lester v. Stroud, supra, lent itself to abuses, and it was to prevent such abuses that the section was included in the Code of 1923. So far as we know, no case has been presented since the adoption of what is now section 677, supra, wherein the lack of notice required has been made the basis of a direct attack as for fraud on a decree of the probate court confirming the report of appraisers or commissioners and setting apart the homestead of the widow and minor child or children, or either of. them. However, we find a strong analogy with the case of Wise v. Miller, 215 Ala. 660, 111 So. 913, 914, in which the following is quoted from Dunklin v. Wilson, 64 Ala. 162: "A party sought to be concluded by a judgment or decree, must be shown to have had notice or knowledge of the suit, actual, or, in some cases, constructive; and if this notice or knowledge be wanting, the record of recovery has no binding effect. This rests on the plain principle of right, that no man shall be deprived of his goods, until an opportunity has been afforded him of making defense."

The late Mr. Justice Sayre said further in Wise v. Miller, supra:

"And our opinion now is that complainant in this cause, one of the defendants in the decree under review, upon clear and convincing proof of the facts averred in the bill, will be entitled to relief for the reason that she cannot be deprived of her property without an opportunity to defend against the bill which sought to subject it to a lien for the payment of the debt of her vendor. It is the policy of the law that there should be an end of litigation and, to that end, private hardship must in some situations give way to public convenience. But that policy assumes that the party has had an opportunity to be heard, for otherwise there has been

no litigation which would invoke the policy. Moreover, the policy underlying our conclusion in this case is paramount and is founded on the fundamental law which guarantees due process. The general considerations of justice and equity which conduce to this conclusion are not far to seek and are convincingly stated in 1 Black on Judgments (2d Ed.) § 276.

"The section referred to is found in the chapter dealing with the collateral impeachment of judgments, but the considerations which go to sustain judgments and decrees of courts of competent jurisdiction are the same whether the attack be direct or collateral. There is, however, this difference in the method of application, a difference arising out of considerations of convenience in the administration of the law: A judgment regular on its face is beyond question or collateral attack, whereas—

" 'The rule that a record is conclusive evidence of its own verity is not applicable in a direct proceeding instituted for the purpose of showing its falsity as to a matter which, if false, shows that the court pronouncing it as a judgment had no jurisdiction of the person of the defendant, and, consequently, that what purports to be a record is in fact no record at all.' 1 Black, § 288.

"A judgment without due process, a judgment against which the defendant had no opportunity to defend, though clothed with all the forms of a judicial proceeding, is not the result of a judicial proceeding. To use the language of Judge Story in Bradstreet v. Neptune Insurance Co., 3 Sumn. [600], 601, 3 Fed.Cas.No.1793, reproduced in Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914, and in Hudson v. Wright, supra (164 Ala. 298, 51 So. 389 [137 Am.St.Rep. 55]) the result of such a proceeding is but a 'solemn fraud,' 'is not so much a judicial sentence as an arbitrary sovereign edict,' having 'none of the elements of a judicial proceeding'; and that, we think, is the law of all cases, provided only the lack of jurisdiction is properly made to appear, that is, in the case of collateral attack, by the face of the record, or, in the case, as here, by direct attack, by the face of the record, affirmatively, or by proof aliunde to the satisfaction of the court."

We are clear to the conclusion the bill is sufficient as against demurrers to set aside the decree of the probate court for lack of notice to complainants.

Appellants further insist that the bill of complaint shows on its face that complainants' rights are barred by laches.

"For a concise statement of the principle of laches, see Hauser v. Foley & Co., 190 Ala. 437, 440, 67 So. 252.

"Laches is not controlled by statute, but is a creature of equity, and exists against one who takes no steps to enforce his rights until a change of circumstances makes it inequitable to do so, or by reason of such long delay any conclusion must be conjectural and the facts obscured by lapse of time, loss of evidence or death of parties. Oxford v. Estes, 229 Ala. 606, 158 So. 534; Meeks v. Meeks, 251 Ala. 435, 37 So.2d 914; Courson v. Tollison, 226 Ala. 530, 147 So. 635; Snodgrass v. Snodgrass, 185 Ala. 155, 64 So. 594; Lucas v. Skinner, 194 Ala. 492, 70 So. 88; Waddail v. Vassar, 196 Ala. 184, 72 So. 14.

"But justifiable ignorance of the existence of the right is an excuse for such delay as would otherwise be laches. Oxford v. Estes, supra; 21 Corpus Juris 244; * * * Haney v. Legg, 129 Ala. 619, 30 So. 34, 87 Am.St.Rep. 81." Wise et al. v. Helms et al., ante, p. 227, 40 So.2d 700, 702.

The recorded deeds from Bettie Fountain to Nannie Fountain Riley, and from Nannie Fountain Riley to her four sisters are not sufficient notice as respects this question. Pittman v. Pittman, 247 Ala. 458, 25 So.2d 26; Winters v. Powell, 180 Ala. 425, 61 So. 96; Wise et al. v. Helms et al., supra; Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259; Saltsman v. Saltsman, 243 Ala. 495, 10 So.2d 752.

The possession of one tenant in common is prima facie presumed to be the possession of all, and it does not become adverse to the cotenants unless they are actually ousted or, short of this, unless the adverse character of the possession by one is actually known to others, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character.

Swafford v. Brasher, 246 Ala. 636, 22 So. 2d 24.

The possession of the property by Bettie Fountain until her death, there having been no administration on the estate of W. D. Fountain, could have been under her quarantine rights and, in the absence of notice to the contrary, is not sufficient to charge complainants with notice of her claim of occupancy as a homestead. Nor are the recorded deeds from Bettie Fountain to Nannie Fountain Riley, and from Nannie Fountain Riley to her four sisters sufficient to put complainants on inquiry. After the death of Bettie Fountain, the possession of Nannie Fountain Riley until her death, for aught appearing, was that of a cotenant with complainants and other heirs at law of W. D. Fountain, deceased.

As I understand the opinion of the majority, other than the concurring opinion of Mr. Justice Brown, this cause is reversed on the sole ground the bill of complaint does not allege how the complainants found out that they had been defrauded. This particular point was not stressed in appellants' brief, and I am unwilling to reverse the case. Considering the bill as a whole, I cannot see the materiality of alleging how they received the information that they had been defrauded. I therefore respectfully dissent.