77 So.2d 903

**Ex parte M. F. DOZIER.**

**1 Div. 455.**

Supreme Court of Alabama.

Jan. 19, 1953.

Rehearing Denied Feb. 24, 1955.

I. D. Jeffrey and Francis H. Hare, Birmingham, for petitioner.

Harold M. Cook, Birmingham, for Board of Commissioners.

FOSTER, Justice.

This is a petition directed to this Court seeking to review a proceeding by the grievance committee of the State Bar before the board of commissioners of the State Bar to disbar petitioner from the practice of law in Alabama. The proceeding was begun on June 27, 1950 by filing charges in writing against petitioner. We shall hereafter refer to petitioner as defendant.

The proceeding has a legal status and the board of commissioners is vested by law with the duty to consider the findings or recommendations of the grievance committee and to hear and determine the complaint or charge. The investigation and charges made by the grievance committee are said to be similar to that of a grand jury. Section 33, Title 46, Code; Lewis v. Gerald, 236 Ala. 91, 181 So. 306. The board of commissioners is set up under authority of section 21, Title 46, Code. And by authority of section 25, Title 46, Code, the board of commissioners is authorized to appoint a grievance committee whose duties are

# 198

there prescribed as construed in the case of Lewis v. Gerald, supra.

Charge No. 1 is based upon an acceptance by defendant of a fee of $1,000, alleged to have been paid him as an attorney on July 26, 1946 by Mrs. Edwards to represent her in breaking or setting aside a will which had been admitted to probate in Mobile County (the will being that of a deceased uncle Albert Ashenberger), and to conduct an investigation and make report to her in respect to the genuineness of the signature to the will; but that he willfully and deceitfully failed and refused to institute proceedings to break or cancel the same and to conduct and get reports as to the handwriting of testator, and refuses to refund the fee aforesaid. The will is alleged to have been probated March 10, 1937. Mrs. Edwards was the daughter of a sister of testator who was an heir and was living when testator died and when the will was probated.

Charge 2 relates to the same transaction. Charges 3 and 4 are not insisted on. Charges 5 and 6 relate to a transaction with Leona Williams, which is a matter of minor importance and would not be sufficient to support a conviction and disbarment.

The defendant pleaded the general issue, and the statute of limitations of three years. Section 24, Title 7, Code. That statute provides a limitation of three years for "Proceedings in any court of this state to disbar any attorney, authorized to practice law in this state".

The commission did not in terms hold that the charges were not barred by limitations, but by a resolution unanimously adopted, found and adjudged him guilty of the charges preferred and by a resolution adopted by eleven for and four against disbarred and excluded him from the practice of law in Alabama.

■ It is apparent that the board of commissioners as thus set up was acting under the judicial power of the State, as defined in section 139, Constitution. Ex parte Thompson, 228 Ala. 113(5), 125, 152 So. 229, 107 A.L.R. 671; State Tax Commission v. Bailey & Howard, 179 Ala. 620, 60 So. 913; State Tax Commission v. Stanley, 234 Ala. 66, 173 So. 609; Ex parte Homewood Dairy Products Co., 241 Ala. 470, 3 So.2d 58. It is therefore a court of this State as referred to in section 24, Title 7, Code, fixing a statute of limitations.

The board of commissioners contends that the limitation of section 24, Title 7, is an unconstitutional exercise of the legislative power infringing upon the judicial power. They cite the case of In re Tracy, 197 Minn. 35, 266 N.W. 88, 267 N.W. 142, which reached that conclusion in an elaborate argument, holding that the legislature has no power to legislate as to the qualifications for admission to the bar, or grounds for disbarment, because that would violate the constitutional inhibition stated above. There was in that state a statute of limitations on the institution of disbarment proceedings. There are many cases refusing to apply to disbarment proceedings the general statute of limitations. 45 A.L.R. 1111; 5 Am.Jur. 434; 6 Corpus Juris 601, section 61; 7 C.J.S., Attorney and Client, § 25, p. 766. Before the Tracy decision the Minnesota Supreme Court had not passed on the constitutionality of the act. It had held that the rule of continuing misconduct applied where the initial offense was the misappropriation of a client's funds. The charges in that case were as set forth in the head-note, that as an attorney he "engaged in business of liquidating indebtedness of small debtors, for soliciting business, willfully assuming status wherein his personal interest was opposed to client's without advising client, deliberately making exploitation of rather than service to clients his professional objective, and conducting practice so as to subject legal profession to disrepute." The court noted that there applies a well-settled principle "that a court which is authorized to admit attorneys has inherent jurisdiction to suspend or disbar them. This inherent power of the court cannot be defeated by the legislative or executive department. The removal or disbarment of an attorney is a judicial act." A great many cases are cited. It also cites cases

to the contrary: In re Evans, 72 Okl. 215, 179 P. 922; In re Cooper, 22 N.Y. 67; In re Applicants for License to Practice Law, 143 N.C. 1, 55 S.E. 635, 10 L.R.A., N.S., 288. The opinion divides cases in two classes: (1) those holding that it is competent within certain limits for the legislature to prescribe minimum qualifications for admission and grounds for disbarment and prescribe procedure as long as they do not interfere with the inherent power of the court ultimately to determine who shall practice before them. (This theory has been recognized in our cases.) (2) Others hold that it is incompetent for the legislative department to attempt in any way to regulate the admission and disbarment of attorneys. (We have not adopted that theory.) The Minnesota court then quoted from one of its opinions that no statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law.

The cases of In re Cooper, supra, and In re Applicants for License to Practice Law, supra, have no reference to disbarment, but approve legislative power to prescribe the minimum requirements for admission. We recognize that theory. The case of In re Evans, 72 Okl. 216, 179 P. 922, cited in the Tracy case, supra, is directly in point. The Oklahoma statute, Comp.Laws 1909, § 267, provided: "All actions for suspension or removal shall be brought within one year after the act charged was committed, and not thereafter." After twelve months from date of the commission of the felony and from his conviction and affirmance, the disbarment proceeding was begun. It is said: "If the statute is applicable this proceeding is barred." It was claimed that this violated the inherent power of the court. It was answered that the inherent power cannot be defeated, but the exercise of it may be regulated within reasonable limits by statute. A former decision of that court was repudiated on that question. That is the only other case on the subject we find where a statute directly applies. See In re Cherry, 166 Minn. 448, 208 N.W. 197, 45 A.L.R. 1110 et seq.

In Ex parte Thompson, supra, we adhered to the principle of the inherent power of the Court, but approved the constitutionality of the legislative proceedings for disbarment by the board of commissioners and its review by this Court. We also held in effect that on such review we are exercising the inherent power of the Court. In the Thompson case, supra, we also referred to the statute of limitations, see 228 Ala. at page 125, 152 So. at page 239, where we said: "Under the evidence, the proceedings were not barred by the statute of limitations." We think the discussion in that opinion is opposed to the reasoning in the Tracy case, supra, but rather favors the Oklahoma opinion in In re Evans, supra.

■ We have never denied the right and power of the legislature to enact laws regulating any proceedings in this Court, even though they relate to matters in which the court is exercising its inherent power, so long as such legislation does not impair unduly an exercise of such powers. Broadway v. State, 257 Ala. 414, 60 So.2d 701; Ex parte Foshee, 246 Ala. 604, 21 So.2d 827. We are not willing to hold that section 24, Title 7, supra, is not an effective statute of limitations as to proceedings begun and conducted under section 33, Title 46, Code.

We now come to the question of fact in respect to that statute. In response to a letter from defendant, and on July 26, 1946, Mrs. Edwards wrote a letter to defendant in the form of a contract of employment of him by her in the following words:

"San Francisco, Calif.
July 26, 1946.
"M. F. Dozier,
Attorney at Law,
Mobile, Alabama.

"Dear Mr. Dozier:

"I hereby employ you to handle a case for me in the matter of the estate of Albert Ashenberger. It is understood I am to pay you One Thousand ($1,000.00) dollars, and an amount equal to 20% of all monies I recover in this estate in excess

of $1,000.00. It being understood and being the meaning of this contract that no deductions are to be made from the amount recovered until I have been reimbursed $1000.00.

"I have heretofore paid you $750.00 of the sum of $1000.00 above mentioned, and I now enclose cashiers check of Crocker First National Bank of San Francisco for $250.00 payable to your order—in settlement of. the balance of $1000.00 due you.

"Ada V. Edwards, Adm."

This engaged his services for a cash fee of $1,000 then paid, and a contingent fee of twenty percent of recovery to handle a case for her in the matter of said estate. The will had been probated on March 10, 1937, more than eight years previously. Mrs. Edwards was a person not authorized to contest the will after its probate. Allen v. Pugh, 206 Ala. 10, 89 So. 470; Cain v. Burger, 219 Ala. 10, 121 So. 17. The time had expired in which to contest, although he had written her that it was not too late. There was no case pending in respect to said estate. There had been a final settlement of the administration on October 19, 1937.

The reprehensible conduct of defendant, if there was any, was in receiving the fee of $1,000 and accepting employment to contest a will by one not authorized to do so, and at a time not allowed by law, and writing her that it was not too late when he knew it was too late.

It is insisted that defendant may have thought that the period in which a contest in equity could be extended if the contest was on the ground of fraud in respect to the execution of the will, and would come within the influence of section 42, Title 7 of the Code. The contest in equity is by statute which authorizes it within six months after the admission of the will to probate. The time there expressed is a condition to the right to sue, not a statute of limitations in respect to it. That was expressly so held in Cronheim v. Loveman, 225 Ala. 199, 142 So. 550; Kaplan v. Coleman, 180 Ala. 267, 276, 60 So. 885; Wachter v. Davis, 215 Ala. 659, 111 So. 917. The same principle applies to the homicide statute. Section 123, Title 7, Code; Woodward Iron Co. v. Craig, 256 Ala. 37, 53 So.2d 586; Louisville & Nashville R. R. Co. v. Chamblee, 171 Ala. 188, 54 So. 681.

If an attorney accepts a fee from his client and agrees to contest a will in equity, when he knows his client is not a person interested under the statute, section 64, Title 46, Code, and when it cannot be done on account of the expiration of the period prescribed by the statute, all of which is or should have been known to him, he should immediately so advise his client and return the amount of the fee, unless his employment is justified on some other theory.

So that, if there was ground on that account to disbar the attorney, the right then accrued and therefore this proceeding was barred by the statute of limitations.

Counsel for defendant would justify the acceptance of a fee and employment at that late day to seek to prove that the will which was admitted to probate was a forgery, or procured by fraud, or revoked by a subsequent will, or was probated on perjured testimony.

There is foundation for such a claim as being sufficient to invoke the inherent power of the probate court to revoke the probate of the will and then consider any newly found will or codicil for probate. That principle was declared in our case of Jordan v. Tharp, 223 Ala. 619, 137 So. 667, heedless of our cases of Johnston v. Glasscock, 2 Ala. 218, Hardy v. Hardy's Heirs, 26 Ala. 524, and Watson v. Turner, 89 Ala. 220, 8 So. 20. Those cases show that our Code section 64, supra, was first enacted in 1806 (Clay's Digest 598), and construed its effect on the inherent power of the probate court.

In the case of Hardy v. Hardy's Heirs, supra, an application was made to the probate court seeking to invoke this inherent power. A later will had been found after the probate of the former. The Court held that the act of 1806, supra, supplied the only remedy to meet that situation, and the probate court had no such jurisdiction since the adoption of that act.

The case of Watson v. Turner, supra, referring to the act of 1806, supra, observed:

"This statute has existed in this state since the year 1806, having undergone a change in phraseology, but not in meaning, in passing through our various Codes enacted since that time. Aiken's Dig. 450. Its effect was to confer on courts of equity a jurisdiction which they never before possessed,—the power to set aside a probated will for fraud, forgery, or other ground affecting the validity of the paper. Another purpose was to shorten the time within which a judgment establishing a will could be disturbed, or the validity of the will, as such, assailed; or, as said in Johnston v. Glasscock, 2 Ala. 218, 235, where the statute of 1806 was construed, 'to provide a period of limitation much shorter than before was known after which the will admitted to probate ceases to be the subject of controversy, and becomes entirely conclusive on parties interested.'

"Prior to this statute there can be no doubt of the fact that the inherent jurisdiction of probate courts in this country, as of Ecclesiastical courts formerly in England, embraced the power to set aside the probate of a will at any time upon the discovery of a posterior will of the testator, and upon proper proof of its execution by the testator."

The question again came up in Caverno v. Webb, 239 Ala. 671, 196 So. 723, 725. The writer of that opinion, Mr. Justice Bouldin, recognized that there was a conflict between the Hardy and Watson cases and the case of Jordan v. Tharp, supra. The Court of course was correct in holding in the Caverno case that the grounds of contest in equity, when properly brought otherwise, included the existence of a later will or codicil. The contest in that case was filed within the statutory period and by an interested person. The principle of the Jordan v. Tharp case was not involved.

But Justice Bouldin, writing for the Court, seemed to be dissatisfied with the Hardy and Watson cases, supra, and wished consideration of the conflict between them and his Jordan case postponed until the question was directly involved. Those early cases have stood uncontested, without change in any respect here material, through the adoption of every Code in Alabama. We think they should not be reflected upon at this time, as was done in the Caverno case, supra. What seemed to be troubling Justice Bouldin in the Caverno case was thus stated by him: "If this statute is exclusive and fixes an arbitrary limit, regardless of vigilance on the one hand, or fraud and concealment on the other, then probate proceedings in rem are given an immunity from direct attack which applies to ·no other judgments at law or decrees in equity." Although Justice Bouldin did not so express it, evidently his thought there was in respect to a bill in the nature of a bill of review or a bill of review. But we do not understand those old cases to make the statute in question supplant also a bill in its nature one of review for fraud or a bill of review on any applicable ground recognized as sufficient to vacate a judgment at law or decree in equity, such as newly discovered evidence. The quotation which we have made from the Watson case, supra, with reference to that statute that "Its effect was to confer on courts of equity a jurisdiction which they never before possessed,—the power to set aside a probated will for fraud, forgery, or other ground affecting the validity of the paper", shows that "the time within which a judgment establishing a will could be disturbed, or ·the validity of the will, as such, assailed", was with reference to a proceeding to impeach the will and not to a long recognized equitable remedy to impeach the judgment of a court for fraud in its concoction or fraudulently invoking the jurisdiction of the court which rendered the judgment or for newly discovered evidence. That includes decrees in the probate court. Hogan v. Scott, 186 Ala. 310, 65 So. 209; Urquhart v. McDonald, 252 Ala. 505, 42 So.2d 9; Laney v. Dean, Ala.Sup., 61 So.2d 109[1]. This of course has reference to fraud extrinsic or

collateral to the issue subject to trial in the suit, whose judgment thereby is sought to be impeached, and not such fraud as is subject to be an issue on the trial called intrinsic in that connection. Anderson v. Anderson, 250 Ala. 427, 34 So.2d 585; Spencer v. Spencer, 254 Ala. 22, 47 So.2d 252. Of course that means as to the probate of a will to exclude from consideration whether there was fraud in procuring the will, or whether it had been revoked or was a forgery, unless it be for newly discovered evidence on a bill of review filed within three years under Equity Rule 66. Evidently that was the thought of Justice Bouldin as to the effect of the Hardy and Watson cases, supra.

But we do not so read those cases. The statute providing for contests in equity opens the door on such a contest to any and all grounds of contest as if there had not been a probate of the will. It cuts off the inherent power of the probate court theretofore existing and fully established to revoke the probate decree, probating the will upon a showing of fraud, not in the concoction of the decree, but in the execution of the will or to show that there was a conflicting later will or codicil, and to confer exclusively on a court of equity such power to be exercised only in the time and by the person there stated. Otherwise the judgment probating a will is as conclusive as the judgment in any other court or proceeding. But a judgment probating a will, as any other judgment at law or in equity, was still subject to be set aside for fraud in procuring the judgment sought to be vacated, not now considering a bill of review for newly discovered evidence. Cf. Hogan v. Scott, 186 Ala. 310, 65 So. 209. We think Justice Bouldin in casting doubt on the Hardy and Watson cases, supra, had not fully analyzed their meaning, thinking they had an application which we think was not intended. There is no doubt the case of Jordan v. Tharp, supra, conflicted with them and ought not to be followed. They were not referred to in that opinion and evidently overlooked.

We do not wish to imply that a *bill of review* on the ground of newly discovered evidence may not also be maintained subject to the limitation of three years prescribed in Equity Rule 66. Banks v. Long, 79 Ala. 319; Gardner v. Gardner, 250 Ala. 251, 34 So.2d 157; Faust v. Faust, 255 Ala. 370, 51 So.2d 671. But that period of time is also a condition to the right, and it had expired when defendant was employed and, therefore, it serves no useful purpose in this proceeding.

Applying that legal status to this defendant, when offered employment by Mrs. Edwards, the inquiry uppermost in his mind evidenced by his correspondence was with the thought that there could be produced evidence to support a bill in the nature of a bill of review for fraud or to invoke, as he thought, the inherent power of the probate court.

It is clear that Justice Bouldin was not satisfied that the Hardy and Watson cases, supra, should be followed in annulling the inherent power of the probate court in that respect. His expression left the legal aspect of it in such condition that it should not be ground to disbar an attorney to accept employment to seek to set aside the probate of a will if evidence could be produced to support it.

Appellant does not seem to have misled Mrs. Edwards as to her rights, as he thought they existed under Justice Bouldin's opinions in Caverno v. Webb and Jordan v. Tharp, supra, and for such views there was color of right. At the time of his employment much more than three years had elapsed from the date of the probate decree on March 10, 1937. But the three year limit provided for in Equity Rule 66 has application to bills of review, not to bills in that nature for fraud in the concoction of the decree, and with no limit of time specified if the inherent power of the probate court then existed. But three years is one of anagoly as to a bill in the nature of one of review, subject to extension of time for good cause shown. Urquhart v. McDonald, 252 Ala. 505, 42 So.2d 9; Laney v. Dean, Ala.Sup., 61 So.2d 109 [1]. The fact

1. 258 Ala. 37.

that no such sufficient evidence came to light is not a reflection on the integrity of the lawyer for accepting employment based on the assumption that such evidence was available. But if so, the dereliction, if there was such, was in accepting employment on such slim chance of success; and the proceeding for disbarment should have been begun within three years from that time.

There was no more of a continuing duty than exists in respect to the failure to discharge any other duty at a time when it was due to be discharged or to pay money. But the continuance of the duty in that regard does not stop the running of the statute of limitations from the date when it was due to have been performed.

We hold that the proceeding was barred by the statute of limitations, not to say that the facts justified disbarment if it were not barred by limitations.

Reversed and rendered discharging defendant.

All the Justices concur.