BOLIN, Justice.
 

 F.L.C. appeals from the decision of the Disciplinary Board of the Alabama State Bar (“the Board”)
 
 [1]
 
 finding him guilty of violating Rules 3.3(a)(1), 8.4(a), 8.4(c), and 8.4(d), Ala. R. Prof. Cond.
 

 The parties stipulated to the following joint statement of facts:
 

 “In April of 1999, Robert Jesse Johnson died as a result of injuries he suffered while sitting in scalding hot bath water at the Conaway Boarding Home. Thereafter, Johnson’s siblings — Beth Scroggins, Mike Johnson, and Brenda Thread — met with F.L.C. about the possibility of pursuing legal action against the owners of the boarding home. At some point during the meeting, the possibility of filing a wrongful death suit was discussed. F.L.C. informed the siblings that in order to proceed with a wrongful death action, the deceased’s father, Robert Percy Johnson, would either have to initiate the suit or waive any and all legal rights relating to the deceased. At the meeting, the siblings informed F.L.C. that Robert Percy Johnson wanted to take action, but was prevented from doing so by his wife, the deceased’s step-mother. After the meeting, F.L.C. did not hear from the siblings for an extended period of time.
 

 “In late 1999 or early 2000, F.L.C. was contacted by Beth Scroggins who advised him that Robert Percy Johnson had instructed the siblings to pursue a wrongful death action against the board
 
 *700
 
 ing home and its owners without his involvement. F.L.C. advised Mrs. Scroggins that he hoped Robert Percy Johnson would sign a waiver or they would be forced to serve him with process. F.L.C. was subsequently informed that Robert Percy Johnson would not sign a waiver relinquishing his rights as sole heir and did not want to be served with anything.
 

 “On or about March 28, 2000, F.L.C. filed a Petition for Administration of an Estate in the matter of the estate of Robert Jesse Johnson. In the Petition for Administration of an Estate, F.L.C. identified Beth Scroggins, William M. Johnson, and Brenda Kaye Thread as the only heirs and next of kin of Robert Jesse Johnson. F.L.C. did not name or identify Robert Percy Johnson, the decedent’s father, in the Petition for Administration of an Estate. The Petition for Administration of an Estate was signed under oath by F.L.C.’s client, Beth Scroggins. F.L.C. then referred the wrongful death action to attorney Mark Spear. After the initial filing of the Petition for Administration of an Estate, a number of probate proceedings were held.
 

 “In October of 2002, the wrongful death claim was mediated. During mediation, Robert Percy Johnson’s existence was raised by defense counsel and there was a brief discussion that, technically, he was the sole heir. F.L.C. told Mr. Spear that they probably needed to get a waiver on the record and suggested that he and Mr. Spear ‘just plead him in and prove the waiver.’ The mediation of the wrongful death suit resulted in a settlement of $150,000. After the mediation and settlement, F.L.C. filed a motion for approval of the settlement with the probate court. Mr. Spear informed F.L.C. that he believed that Robert Percy [Johnson] needed to be listed as the sole heir in the forms accompanying the motion for approval of the settlement. As a result, Robert Percy Johnson was listed as the sole heir in the motion for approval of the settlement [filed on December 4, 2002].
 

 “In February of 2003, Robert Percy Johnson passed away. In March 2003, F.L.C. filed Petition for Order of Distribution. In the motion, F.L.C. argued that Robert Percy Johnson had either waived his status as an heir or that Mr. Johnson’s wife was estopped from asserting his status as an heir. Opposing counsel later filed a motion opposing F.L.C.’s claim that Robert Percy Johnson had waived or was estopped from claiming a share of the settlement. Probate Judge Don Davis held a hearing on the matter on October 20, 2003. At that hearing, Judge Davis approved payment of a $20,000 attorney’s fee to F.L.C. after being informed by the parties that Mr. Johnson had been left off the original Petition as an heir. On November 26, 2003, Judge Davis entered an order declaring that Robert Percy Johnson was the sole heir and all proceeds of the wrongful death settlement were to be delivered to his estate. Judge Davis’s ruling was appealed and later affirmed by the Alabama Court of Civil Appeals.
 

 “On May 31, 2005, Judge Davis entered a show cause order requiring F.L.C. and Mrs. Scroggins to demonstrate why they should not be held in contempt of court for filing pleadings ‘that contained false information in that they did not disclose in the Petition for Letters of Administration the identity of Robert Percy Johnson ... ’ and failed to disclose his existence to the Court until approximately twenty-two months later. F.L.C., Mr. Spear and opposing counsel, met with Judge Davis at his office shortly after the show cause order was is
 
 *701
 
 sued. Judge Davis asked F.L.C. if he would be willing to reimburse the estate of Robert Percy Johnson some money to resolve the matter. F.L.C. replied that he would. A few days later, Judge Davis called F.L.C. and opposing counsel into his office and stated that he would cancel the show cause hearing if F.L.C. paid the estate $1,000 plus [its] expenses in the appeal. F.L.C. later paid $1,060 to the opposing party.
 

 “On August 26, 2005, Judge Davis entered an order accepting the Petition for Final Settlement of the estate of Robert Jesse Johnson. In the order, Judge Davis found that F.L.C. was in contempt for the filing of a known false pleading with the Court and fined F.L.C. $1,000 for being in contempt of Court. Judge Davis then noted that F.L.C. had already paid the estate $1,000. F.L.C. and Scroggins subsequently appealed Judge Davis’s order to the circuit court. After the parties entered into a joint settlement agreement, the circuit court vacated Judge Davis’s August 26, 2005, order and approved the final settlement of Robert Jesse Johnson’s estate.”
 

 On September 6, 2006, the Alabama State Bar (“the Bar”) filed charges against F.L.C. alleging that he violated Rule 3.3(a)(1), Ala. R. Prof. Cond. (“Candor Toward the Tribunal”), and the following subsections of Rule 8.4, Ala. R. Prof. Cond. (“Misconduct”): (a), (c), and (d). The Bar alleged that F.L.C. filed a false petition for the administration of the estate of Robert Jesse Johnson by failing to identify the decedent’s father, Robert Percy Johnson, as the decedent’s sole heir. Additionally, the Bar alleged that F.L.C. failed to notify the probate court of the existence of Robert Percy Johnson throughout the course of the proceedings in the probate court.
 

 On October 4, 2006, F.L.C. answered the charges and moved to dismiss them, arguing that they were barred by the applicable statute of limitations. The Board entered an order on May 24, 2007, denying F.L.C.’s motion to dismiss the charges against him.
 

 On April 24, 2008, F.L.C. and the Bar submitted a joint stipulation of facts and exhibits with the Board. On May 8, 2008, each party submitted a brief in support of its position. F.L.C. also moved the Board for a judgment as a matter of law at that time, arguing that the charges filed against him were barred by the applicable statute of limitations. On May 22, 2008, the Board entered an order finding that the charges against F.L.C. were timely filed and that F.L.C. was guilty of violating Rules 3.3(a)(1) and 8.4(a), (c), and (d), Ala. R. Prof. Cond. On November 18, 2008, F.L.C. agreed to accept a private reprimand and to pay restitution of $10,000. F.L.C. also reserved the right to appeal the sole issue whether the charges filed against him were barred by the applicable statute of limitations.
 

 Standard of Review
 

 The issue whether charges alleging a violation of the Alabama Rules of Professional Conduct are barred by the applicable statute of limitations is a question of law this Court reviews de novo.
 
 Tipler v. Alabama State Bar,
 
 866 So.2d 1126 (Ala. 2003).
 

 Discussion
 

 F.L.C. argues that the petition for administration of the estate of Robert Jesse Johnson (“Jesse”), which contained the false representation as to the rightful heirs of Jesse’s estate, was filed on March 28, 2000, and that the formal charges against him were not filed until September 6, 2006. Therefore, F.L.C. argues that the charges against him were untimely because, he argues, they were filed beyond the applicable
 
 *702
 
 six-year limitations period set forth in Rule 31, Ala. R. Disc. P.
 

 The Bar argues that in addition to filing a false petition, F.L.C. was also charged with failing to disclose the existence of Jesse’s rightful heir throughout the course of the proceedings in the probate court despite a continuing duty to do so. Thus, the Bar contends that F.L.C.’s failure to rectify the misrepresentation until December 4, 2002, constituted a continuing offense and that the formal charges against F.L.C. filed on September 6, 2006, were timely.
 

 F.L.C. was first charged by the Bar with violating Rule 3.3(a)(1), Ala. R. Prof. Cond. This rule is included in that portion of the rules relating to the lawyer as an advocate and provides as follows:
 

 “Rule 3.3. Candor Toward the Tribunal.
 

 “(a) A lawyer shall not knowingly:
 

 “(1) make a false statement of material fact or law to a tribunal;
 

 [[Image here]]
 

 This duty imposed upon a lawyer, owed by the lawyer to the tribunal before which the lawyer is appearing, is a continuing one. Rule 3.3(b), Ala. R. Prof. Cond., states:
 

 “(b) The duties stated in paragraph (a) continue
 
 to the conclusion of the proceeding,
 
 and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6 [‘Confidentiality of Information’].”
 

 (Emphasis added.)
 

 F.L.C. argues that the statute of limitations began to run on March 28, 2000, when he initially filed the petition for the administration of Jesse’s estate and omitted Robert Percy Johnson as the sole heir at law to Jesse’s estate, and that more than six years elapsed before the Bar initiated formal proceedings against him. Rule 31, Ala. R. Disc. P., provides:
 

 “Formal disciplinary proceedings before the Disciplinary Board must be instituted by the filing of formal charges within six (6) years from the accrual of the offense, provided that proceedings seeking discipline based upon fraud by a lawyer or for an offense the discovery of which has been prevented by concealment by the accused lawyer shall not be barred until the expiration of one (1) year after discovery of the offense by the aggrieved party or the General Counsel.”
 

 In
 
 Alabama State Bar v. Chandler,
 
 611 So.2d 1046 (Ala.1992), an attorney entered into an agreement to represent a client and received a retainer of $12,500. On February 17, 1985, the client informed the attorney that he had hired new counsel and that the attorney’s services were no longer needed. The client requested at that time an itemized accounting of the attorney’s services and a refund of the unearned portion of the retainer. On March 8, 1985, the attorney responded to the client by informing him that he would supply the client’s file to new counsel but that the $12,500 retainer was “absolutely non-refundable.” 611 So.2d at 1047. Beginning in 1990, the client’s new counsel began requesting a refund of the retainer from the attorney. On January 10, 1991, the attorney responded to the client’s new counsel, reiterating his contention that the $12,500 retainer was “absolutely non-refundable.”
 
 Id.
 

 On July 18, 1991, the Office of General Counsel for the Alabama State Bar petitioned the Board to take disciplinary action against the attorney. The complaint charged that the attorney had violated Disciplinary Rules DR 2-lll(A)(3) and DR 9-102(B)(3) of the Code of Professional
 
 *703
 
 Responsibility of the Alabama State Bar,
 
 [2]
 
 by refusing to account for funds and by failing to refund the unearned retainer. The attorney moved the Board for a summary judgment, arguing that the disciplinary complaint was barred by the six-year limitations period contained in Rule 31, Ala. R. Disc. P. On April 10, 1992, the Board granted the attorney’s motion for a summary judgment. 611 So.2d at 1048.
 

 The Bar argued on appeal that the attorney’s refusal to comply with the disciplinary rules constituted a “continuing offense” and that the six-year limitations period of Rule 31 did not begin to run until “ ‘the lawyer has complied ... or until the client no longer requests compliance.’” 611 So.2d at 1048. Although this Court affirmed the summary judgment in favor of the attorney, we stated the following:
 

 “ ‘In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time. Note,
 
 Statute of Limitations in Criminal Law: A Penetrable Barrier To Prosecution,
 
 102 Pa. L.Rev. 630, 641-642 (1954).’
 
 John v. State,
 
 96 Wis.2d 183, 188, 291 N.W.2d 502, 505 (1980). ‘Even if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act.’ 96 Wis.2d at 188, 291 N.W.2d at 505.
 

 “Because the continuing offense concept, by extending limitations periods, conflicts with the policies and principles on which limitations periods are based, the concept ‘should be applied in only limited circumstances,’
 
 Toussie v. United States,
 
 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (refusal to register for the draft not a continuing offense), such as when required by the ‘explicit language of the substantive criminal statute,’
 
 id.
 
 at 115, 90 S.Ct. at 860, or by the inherent ‘nature of the crime involved.’
 
 Id.”
 

 Chandler,
 
 611 So.2d at 1048.
 

 In addition to being charged with violating Rule 3.3(a)(1) for knowingly making a false representation to the probate court in the petition for the administration of Jesse’s estate, F.L.C. was also charged with failing to rectify the misrepresentation by notifying the probate court of the existence of Jesse’s father. Although not a criminal statute, Rule 3.3(b), Ala. R. Prof. Cond., specifically states, in “explicit language” required by
 
 Toussie v. United States,
 
 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), that an attorney’s duty as stated in 3.3(a)(1) continues to the conclusion of the proceeding. The Comment to Rule 3.3 provides that an attorney’s obligation to rectify the presentation of false evidence continues to the conclusion of the proceeding. The Comment further states that “[tjhere are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.”
 

 F.L.C. initially violated Rule 3.3(a)(1) on March 28, 2000, when he filed the petition for the administration of Jesse’s estate and omitted Jesse’s father as Jesse’s sole heir. Despite having a continuing duty, under Rule 3.3(b), to rectify this misrepresentation, the existence of Jesse’s father as Jesse’s sole heir was not revealed to the probate court until December 4, 2002, when the motion for final approval of the settlement of the
 
 *704
 
 wrongful-death action was filed.
 
 [3]
 
 F.L.C. did not disclose the true heir’s existence and identity when he filed a “motion to approve litigation” in the probate court on October 24, 2002. Rather, in response to a request by the probate court clerk’s office to provide this information, it was supplied by an amended schedule filed by counsel F.L.C. had associated to prosecute the wrongful-death action. The failure of F.L.C. to make this most important disclosure to the probate court is equivalent to and constituted a continuing misrepresentation to the probate court until December 4, 2002. Accordingly, we conclude that F.L.C.’s conduct in this case constituted a continuing violation — as discussed in
 
 Chandler
 
 and under Rule 3.3(b) — of Rule 3.3(a)(1) until December 4, 2002. Therefore, the charge alleging a violation of Rule 3.3(a)(1) filed by the Bar on September 6, 2006, was timely.
 

 F.L.C. was also charged with violating Rules 8.4(a), (c), and (d), Ala. R. Prof. Cond., which provide:
 

 “Misconduct.
 

 “It is professional misconduct for a lawyer to:
 

 “(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 

 [[Image here]]
 

 “(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
 

 “(d) engage in conduct that is prejudicial to the administration of justice
 

 [[Image here]]
 

 Rule 8(4) is included in that section of the Rules of Professional Conduct headed “Maintaining the Integrity of the Profession.” It deals with misconduct by a lawyer and, unlike Rule 3.3, does not state whether the misconduct must occur before a tribunal or whether it must occur extra-judicially or whether the rule encompasses both. Also unlike Rule 3.3, it does not contain a subsection containing “explicit language” akin to a continuing-offense concept.
 

 
 *705
 
 F.L.C. cites
 
 Ex parte Dozier,
 
 262 Ala. 197, 77 So.2d 903 (1955), and
 
 Ex parte Cooke,
 
 263 Ala. 481, 83 So.2d 195 (1955), in support of his argument that the continuing-offense concept is not available to extend the accrual of the limitations period applicable to Rule 8.4. In
 
 Dozier,
 
 a lawyer accepted employment with a client to prosecute a will contest, even though he knew that the client did not have standing to pursue such a contest and that the time to institute the contest had expired. The duty the lawyer had to refund the fee after his misconduct was held not to be a continuing one so as to prevent the limitations period from accruing at the time of the initial misconduct. In
 
 Cooke,
 
 a lawyer failed to turn over money to a client and was convicted in federal court of two counts of embezzlement. When the Bar did not prefer charges within the allowable period after the convictions, this Court held that the charges were time-barred and rejected the Bar’s contention that the lawyer had a continuing duty to surrender his law license upon conviction. However, both
 
 Dozier
 
 and
 
 Cooke
 
 are distinguishable from this case. Dozier committed a single act of misconduct that did not occur before a court or other tribunal. Cooke committed two acts of misconduct for which he suffered convictions for embezzlement, but the convictions were not related to any misconduct before the federal court, and any alleged duty to surrender his law license to the Bar thereafter did not occur before a court or tribunal.
 

 F.L.C., however, misrepresented matter to a court and thereafter continued to conceal the misrepresentation in proceedings before that court. F.L.C. admitted in the joint stipulation of facts that he knew that Jesse’s father was the sole heir at law of Jesse’s estate. Notwithstanding that knowledge, he prepared a pleading filed in the Mobile Probate Court that he knew to be false. Thereafter, “a number of probate proceedings were held,” and F.L.C. himself never advised the probate court in any of those proceedings of the misrepresentation he made in the petition that he had prepared, that his client had signed, and that he had filed in the probate court. As stated earlier, the correction of the record came from counsel associated by F.L.C., not F.L.C.
 

 In this Court’s holding in
 
 Chandler,
 
 the quoted portion of
 
 Toussie
 
 with regard to continuing offenses extending limitations periods is applicable here.
 
 Toussie
 
 states that because the continuing-offense concept, as argued by the Bar here, conflicts with the policies and concepts on which limitations periods are based, it should be used only in limited circumstances, “such as when required by the ‘explicit language of the substantive criminal statute’ ... or by the inherent ‘nature of the crime involved.’ ”
 
 Chandler,
 
 611 So.2d at 1048.
 

 In contrast to Rule 3.3(b), there is no “explicit language” in Rule 8.4 that would convey, or specifically provide for, the applicability of a continuing-offense exception to the accrual of the limitations period. It can be argued that the use of the terms “violate” and “engage in conduct” contemplate an “instantaneous” act on the part of the offending attorney that “expresses the intent to trigger the limitations period” by the attorney’s commission of the proscribed act.
 
 Chandler,
 
 611 So.2d at 1048. This was the case in both
 
 Dozier
 
 and
 
 Cooke.
 
 Conversely, here F.L.C. violated the Rules of Professional Conduct by assisting Beth Scroggins (over a period of time) in becoming a personal representative under false pretenses, engaging in conduct (over a period of time) involving dishonesty, fraud, deceit, or misrepresentation before the probate court, and further engaging in conduct (over the majority of the time that the decedent’s estate proceedings, as well as the wrongful-death action, was pending) that was prejudicial to the administration of justice.
 

 
 *706
 
 A license to practice law is a privilege that is based upon honor, integrity, and respect for the rule of law. Rule 8.4, in dealing with misconduct of a lawyer, forbids conduct that is the antitheses of the standard required to “maintain the integrity of the profession.”
 
 Black’s Law Dictionary
 
 defines “lawyer misconduct” as “[a]n attorney’s dishonesty or attempt to persuade a court or jury by using deceptive or reprehensible methods.”
 
 Black’s Law Dictionary
 
 1020 (8th ed.2004). This proceeding is not a criminal proceeding, but the inherent “nature of the [conduct] involved,”
 
 Chandler,
 
 611 So.2d at 1048, herein by a lawyer who was serving as an officer of the court, strikes at the basic trust between the bench and the bar, severely hampering the administration of justice.
 

 Although there may be alleged violations of Rule 8.4 that could be isolated or instantaneous occurrences of misconduct as to which a limitations period would immediately begin to run, we recognize that conduct such as F.L.C.’s may occur over a period of time, especially in judicial proceedings, such that the nature of the continuing misconduct justifies the application of the continuing-offense concept to a challenge based upon the expiration of the limitations period. Accordingly, we conclude that the disciplinary charges instituted by the Bar with regard to F.L.C.’s violations of Rules 8.4(a), 8.4(c), and 8.4(d), Ala. R. Prof. Cond., were also timely filed.
 

 AFFIRMED.
 

 COBB, C.J., and STUART, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 LYONS, WOODALL, and SMITH, JJ., concur in the result.
 

 [1]
 

 . Rule 12(f), Ala. R. Disc. P., was amended effective October 6, 2008, to provide that appeals from the Board shall be directly to this Court.
 

 [2]
 

 . The Code of Professional Responsibility was superseded by the Alabama Rules of Professional Conduct effective January 1, 1991.
 

 [3]
 

 . It is unclear what F.L.C. was referring to when he initially advised Beth Scroggins and her siblings that their father would have to sign a "waiver.” For instance, it could have been a waiver of notice in response to the filing of a petition for the administration of Jesse’s estate; it could have been a waiver or relinquishment of his priority to serve as personal representative of Jesse's estate; or, it could have been a disclaimer of his share of the estate or proceeds of a wrongful-death action. See Joint Submission of Stipulation of Facts and Exhibits: "[F.L.C.] informed the siblings that in order to proceed with a wrongful death action, the deceased's father, Robert Percy Johnson, would either have to initiate the suit or waive any and all legal rights relating to the deceased .... [F.L.C.] advised Mrs. Scroggins that he hoped Robert Percy Johnson would sign a waiver or they would be forced to serve him with process.”
 

 Ironically, unlike § 43-8-164, Ala.Code 1975, which requires notice to a surviving spouse or next of kin in a testate proceeding (providing an opportunity to contest the offered will), there is no requirement for notice to heirs or next of kin in an intestate proceeding in the absence of competing petitions. Therefore, the priority to serve as personal representative of the decedent’s estate given to the father by § 43-2-42, Ala.Code 1975, and the concomitant right to file a wrongful-death action, was "waived,” or relinquished, pursuant to § 43-2-43(b), Ala.Code 1975, when Jesse's father failed to file for an administration within 40 days of Jesse's death. Thus, it would not have been necessary to serve Jesse’s father as a personal representative against his wishes or to serve him with notice of any petition filed by Scroggins; accordingly no "waiver” of whatever nature would have been required from him. He still, however, would have been entitled to the proceeds of the wrongful-death settlement, although by his omission as the sole heir, the probate court was not apprised of his status until December 4, 2002.